**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **BILLIE JO LORNTZEN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No.:  03-2405-CM** |
| | ) | |
| **SWIFT TRANSPORTATION CO., INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**PLAINTIFF BILLIE JO LORNTZEN'S MEMORANDUM IN**
**OPPOSITION TO DEFENDANT'S MOTION FOR STAY AND**
**TO COMPEL ARBITRATION**

COMES NOW the plaintiff, Billie Jo Lorentzen, by and through her counsel of record, and submits the following Memorandum in Opposition to the Defendant's Motion for Stay and to Compel Arbitration.

**INTRODUCTION**

Defendant has moved to stay proceedings and compel arbitration, pursuant to the terms of its Alternate Dispute Resolution ("ADR") policy.  Defendant bases its motion on the Federal Arbitration Act, 9 U.S.C. § 1 et seq.  However, the Federal Arbitration Act specifically exempts from coverage, "seamen, railroad employees and any other class of workers engaged in foreign or interstate commerce."  *See* 9 U.S.C. § 1.  As clearly demonstrated below, Ms. Lorntzen falls within this category of workers, because she is a transportation worker engaged in foreign or interstate commerce, and therefore Swift's arbitration agreement is unenforceable against her. *See Circuit City Stores, Inc. v. Adams,* 532 U.S. 105, 121 S.Ct. 1302, 1306 (2001).

A.   **Ms. Lorntzen Is Exempt from Coverage Under the Federal Arbitration Act, Because She Is a Transportation Worker.**

In *Circuit City v. Adams*, the Supreme Court interpreted the Act to exclude from coverage contracts of employment of "transportation workers." *Id.* "Section 1 exempts from the FAA only contracts of employment of transportation workers." *Circuit City,* 121 S.Ct. at 1311.

As Ms. Lorntzen states in her attached declaration, she began working for Swift Transportation Company in 1994, after being employed by its predecessor, MNX Trucking Company. (See Exhibit A, Declaration of Billie Jo Lorntzen, ¶ 1).   Nearly all of her daily duties were directly connected with the hiring, training, and testing of truck drivers.  As she testifies in her declaration:

- She gathered and prepared the necessary documentation required by the United States Department of Transportation ("DOT") for the certification and  licensing of new drivers. *See Id.*, ¶¶  4, 6, 7, 10, 15, and 21).

- For each prospective driver, she completed the necessary documentation for Swift's "Driver File Checklist." (See attached Exhibit A-1).

- She provided training and orientation to prospective new truck-drivers. *Id.*, ¶¶ 5, 6, 13, and 14.

- She helped the drivers complete the "long form physical" documentation requird by the DOT. *Id.*, ¶ ¶ 8, 11 and 12).

- She collected and tested urine samples of prospective and current truck-drivers, as part of Swift's drug testing program, and administered hearing and vision tests for the drivers, under strict guidelines promulgated by the DOT. *Id.*, ¶¶ 10, 21. "

- Her work in the recruiting department was essential to operation of Swift Transportation Company. Without her services, including recruiting new drivers, the Swift terminal would soon cease to operate. And, without a solid recruiting department, the company would not be able to hire and retain drivers. Because of the constant turnover among drivers, the job that she performed was of paramount importance to Swift's operations. (*See Id.*, ¶ 3).

- Her most recent performance evaluation showed that her job assignment was "recruiting/compliance." In this capacity, she had received praise from her employer for her ability to handle the driver files. (Exhibit B, performance evaluation)

- Ms. Lorntzen performed these duties in a highly professional manner. An e-mail message from one of her supervisors stated,

Shane, I would like you to know that Billy Jo [sic] does an exceptional job on the driver files. The files coming from your terminal are far superior to almost every other outside terminal location. Billy Jo's files take far less time to go through and are more complete than almost all other files. She is certainly an asset to our compliance department and we appreciate the cooperation and efficiency when we call her for help.

(Exhibit C, e-mail message, dated 11/10/1999).

Thus, Ms. Lorntzen was a "transportation worker," who was directly involved in interstate commerce, and is exempted from coverage of the FAA.

In *Circuit City v. Adams*, the Supreme Court reversed the Ninth Circuit, which had held that § 1 of the FAA excludes from arbitration *all* employment contracts of employees engaged in interstate commerce. *See* 194 F.3d 1070 (9th Cir. 1999).[1] In explaining the different treatment of such

---

[1] The Tenth Circuit had already held that the exemption was limited to transportation workers. *See McWilliams v. Logicon, Inc.,* 143 F.3d 573, 576 (10th Cir. 1998) (affirming Judge

workers, the Supreme Court stated,  "It would be rational for Congress to ensure that workers in general would be covered by the provisions of the FAA, while reserving for itself more specific legislation for those engaged in transportation."  *Id.* at 1312.

Most obviously, courts have held that § 1 exempts truck drivers who deliver goods.  *See Harden v. Roadway Package Sys., Inc.,* 249 F.3d 1137, 1140 (9th Cir.2001) (holding that an individual truck driver who provided courier service to deliver packages throughout the United States was a transportation worker exempted from an arbitration agreement); *Gagnon v. Service Trucking, Inc.,* 266 F.Supp.2d 1361, 1364 (M.D. Fla. 2003) (truck drivers are excluded under FAA). Indeed, Swift's ADR Policy specifically provides that it excludes truck drivers. ("This policy covers all *non-driver* employees of Swift Transportation Co., Inc.") (*See* ADR Policy, p. 3) (emphasis added).

Moreover, a transportation worker, even one who does not directly transport goods, falls into the FAA's exemption because the employee belongs to a class of workers engaged in interstate commerce.  *See Bacashihua v. United States Postal Serv.,* 859 F.2d 402, 405 (6th Cir.1988) (exempting from the FAA a parcel post mail distributor at a Bulk Mail Center who did not directly deliver mail or packages); *see also American Postal Workers Union, AFL-CIO v. United States Postal Serv.,* 823 F.2d 466, 473 (11th Cir.1987) (determining that postal workers, who are "responsible for dozens, if not hundreds, of items of mail moving in 'interstate commerce' on a daily basis, fall within the purview of the FAA's exemption).

Further, a supervisor who oversees delivery-drivers is exempted.  *See Palcko v. Airborne*

---

VanBebber's decision that § 1's exclusion applies only to "those engaged in the channels of interstate commerce.").

*Express, Inc.,* 2003 WL 21077048 (E.D. Pa. 2003).   As the court in *Palcko* stated,

> Here, defendant is an interstate shipping company responsible for moving packages and bulk goods in interstate commerce. According to plaintiff's affidavit, she worked as a supervisor at defendant's Philadelphia facility, overseeing between 30-35 delivery drivers directly responsible for moving the goods. She was directly involved in a transportation business engaged in the channels of interstate commerce.

*Id.* at p. 3.  In *Patterson v. Tenet Healthcare, Inc.,* 113 F.3d 832 (8th Cir. 1997), the court held that the § 1 exemption applies to, "only those classes of workers who are likewise engaged directly in . . . the movement of interstate or foreign commerce or in work **so closely related thereto as to be in practical effect part of it.**"  113 F.3d at 836 (*quoting Tenney v. Engineering, Inc. v. United Elec. Radio & Machine Workers of Amer.,* 207 F.2d 450, 452 (3d Cir. 1953) (en banc)).

Obviously, as the facts in her declaration demonstrate, Ms. Lorntzen's job as safety and compliance worker in the recruiting department was so closely related to the movement of goods in interstate commerce by truck drivers as to be part and parcel of it.  Indeed, her participation in the DOT mandated drug-testing program by itself shows that she qualifies under the plain meaning of the term "transportation worker." *See* 49 CFR § 391.41(b)(12) (2003) (Federal Motor Carrier Safety Regulations regarding physical qualifications and examinations of drivers).[2]

In *Buckley v. Nabors Drilling USA, Inc.*, 190 F.Supp.2d 958 (S.D. Texas 2002), the court held that all persons employed as "seamen" are excluded from coverage of the FAA.  The defendant argued that the exclusion only applies to seamen who are actually engaged in the movement of goods in interstate commerce.  *Id.* at 960-61.  The court rejected defendant's argument.

The Court wholly rejects Defendant's misguided construction and application of *Circuit City* and other related appellate court cases.  In arriving at the conclusion that

---

[2]  Pursuant to 49 U.S.C. § 104 (1994), motor carriers are regulated by the Federal Highway Administration ("FHWA") of the U.S. Department of Transportation.

§ 1 refers only to seamen actually involved in the moving of goods, Defendant minces words and concepts, quotes language entirely out of context, and misinterprets the fundamental reasoning underpinning the *Circuit City* decision.  A thorough and comprehensive reading of *Circuit City* facilely reveals that the text and legislative history of § 1 support only one plausible interpretation of the statute's reference to seamen and railroad workers -- namely, that § 1 exempts from the FAA's coverage all seamen, as well as all railroad employees, by virtue of the fact that all seamen and all railroad employees are directly involved in the transport of goods in interstate commerce.

*Id.* at 961-62.  For the same reason, it is completely misguided for defendant Swift to assert that the term "transportation workers," as used by the Supreme Court, applies only to those workers who are actively moving goods in interstate commerce, such as truck drivers.

In *Circuit City v. Adams*, writing from the dissent, Justice Souter described such workers as "*employees of transporters*, the very carriers of commerce."  *Id.* at 1321. (emphasis added).  Certainly, no indication exists that the exemption in the statute was intended to refer only to those transportation workers *who drive trucks*.  Instead, the Supreme Court repeatedly used the term "transportation workers" to describe the class of employees exempted from coverage – not truck drivers.  The latter term is obviously broader than just those actually engaged in the movement of goods in interstate commerce.  *Cf. Adkins v. Labor Ready, Inc.,* 303 F.3d 496, 505 (CTA4 2002) (temporary workers subject to assignment in many different industries are not exempted by § 1).  As the court stated, "Adkins does not contend (and the evidence does not show) that a majority or even a plurality of the plaintiffs' daily assignments were in transportation-related industries."  *Id.* at 505.   In contrast, nearly all of Ms. Lorntzen's daily assignments were in the trucking industry.  (See Exhibit A, Declaration of Billie Jo Lorntzen).

Under the plain language of the Act, and the U.S. Supreme Court's recent interpretaiotn of Section 1, Ms. Lorntzen is specifically exempted from coverage under the Act.  Thus, Defendant's

motion to stay and compel arbitration should be denied.

**B.** **The Arbitration Agreement Is Unenforceable Because it Is Illusory and Unconscionable.**

Defendant Swift bears the initial burden of presenting evidence sufficient to demonstrate the existence of an enforceable agreement to arbitrate. *Klocek v. Gateway, Inc.,* 104 F.Supp 2d 1332, 1336 (D. Kan. 2000). This court applies state law principles to determine whether a valid arbitration agreement exists. *Id.* Further, the FAA provides that a court may refuse to enforce an arbitration agreement upon "such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

Here, the Swift arbitration agreement is unenforceable because it is an illusory contract. When a dispute concerns whether there is a valid and enforceable arbitration agreement in the first instance, there is no presumption of arbitrability on this initial issue. *See Riley Mfg. Co., Inc., v. Anchor Glass Container Corp.*, 157 F.3d 775, 779 (10th Cir. 1998); *Gourley v. Yellow Transportation LLC,* 178 F.Supp.2d 1196, 1202 (D. Colo. 2001). A court has jurisdiction to determine initially the existence of a valid arbitration agreement unless there is "clear and unmistakable evidence" within the four corners of the agreement that the parties intended to submit to an arbitrator the question of whether an agreement to arbitrate exists. *Id.* at 780; *Gourley*, 178 F.Supp.2d at 1202.

Here, nothing in the ADR Policy demonstrates the parties' intent to submit to an arbitrator the threshold question of whether an enforceable agreement to arbitrate exists. Thus, this court must resolve the threshold question whether there exists an agreement to arbitrate. *See Riley*, 157 F.3d at 781; *Gourley*, 178 F.Supp.2d at 1202.

The Employment Handbook clearly states that Swift can change any of its terms, (except as to at-will employment) at any time. (*See* Plaintiff's Exhibit D, Employment Handbook, p. 1). In particular, the Employment Handbook states, "Except for the employment at-will policy, Swift reserves the right to revise, delete, or add to any and all policies, procedures, work rules or benefits stated in this handbook." (See Exhibit D, attached p. 1). In other words Swift is not bound by any of the terms of the handbook, while it claims that Ms. Lorntzen is bound by them all -- including the ADR provision. (*See Id.*, pp. 6-7). *See also* Doc. # 9, Defendant's Memorandum in Support of Motion to Stay, Exhibit C, "Acknowledgment and Receipt" ("I also acknowledge that, except for the policy of at-will employment, terms and conditions of employment with the Company **may be modified at the sole discretion of the Company, with or without cause or notice at any time**.)" (emphasis added).

It is clear that an agreement to arbitrate is unenforceable when it contains a disclaimer that its terms can be changed at any time. *Phox v. Atriums Management Co., Inc.*, 230 F.Supp.2d at 1282-83 (disclaimer that handbook is not an enforceable contract renders arbitration clause unenforceable); *Gourley*, 178 F.Supp.2d at 1203; *Diaz v. Arapahoe (Burt) Ford, Inc.*, 68 F.Supp.2d 1193, 1194 (D. Colo. 1999); *Hooters of Am., Inc., v. Phillips*, 173 F.3d 933, 939 (4th Cir.1999) (agreements to arbitrate are invalid where they allow the employer to unilaterally change the rules); *Dumais v. Am. Golf Corp.*, 150 F.Supp.2d 1182, 1193 (D.N.M.2001) (arbitration agreement that bound employee but left employer free to renege or to unilaterally modify the terms at any time was illusory and could not be enforced against employee).

It is true that the Employment Handbook contains contradictory language stating that the arbitration clause *is* binding. "Nothing in this Non-Driver Handbook (with the exception of the

employment at-will policy *and the Alternative Dispute Resolution policy*) . . . is intended to create a contract, promise or representation of continued employment for any employee." (Plaintiff's Exhibit D, p. 1). However, the language quoted above from the Employment Handbook, and the signed "Acknowledgment and Agreement," specifically contradicts the promise to arbitrate. "Likewise, the arbitration clause does not constitute a separate binding agreement because defendant's promise to arbitrate is illusory." *Phox*, 230 F.Supp.2d at 1283.[3] For this reason, the ADR policy is unenforceable, and defendant Swift's motion to stay and compel arbitration should be denied.

**C.    The ADR Policy Is Unconscionable Because it Shortens the Statute of Limitations and Forfeits Ms. Lorntzen's Substantive Rights under Title VII.**

Second, defendant has asserted that Ms. Lorntzen has no rights to pursue her Title VII remedies because she failed to comply with its notice provisions. (*See* Defendant's Answer, ¶ 24). The Arbitration Agreement states:

> An employee who has a dispute with the Company and who is seeking arbitration of the dispute, must, within the applicable statute of limitations period, present a written notice to the Director of Human Resources setting forth the basis for his or her dispute. For procedure notices must be delivered by hand or sent via facsimile or express mail delivery service to: [address of Swift]. . . . Time is of the essence for **all steps of this procedure and all enunciated deadlines must be followed."**

(*See* ADR policy, pp. 1-2). The ADR Policy goes on to state, "If the employee is not satisfied with the Company's response, he or she **must notify the Company in writing of his or her intent**

---

[3]    To the extent the handbook is ambiguous, it should be construed against the drafter. Further, to the extent the ADR Policy is ambiguous on this issue, the court should also construe it against the drafter, Defendant Swift, who was also the party with superior bargaining power. *Weber*, 913 P.2d at 476 (employment contract should be construed against drafter); *Liggatt v. Employers Mut. Cas. Co.*, 46 P.3d 1120, 1126 (Kan.2002) (ambiguous language is construed against the drafter).

**to take the matter to binding arbitration** within ten (10) business days of receipt of the Company's response.  *Id.*  (emphasis added).  It is undisputed that Ms. Lorntzen never notified Swift that she intended to pursue arbitration.  (See Exhibit A, Declaration of Billie Jo Lorntzen, ¶ 23).

In its Answer, defendant has raised as an affirmative defense:

24.     Defendant states that plaintiff's claims are barred by her failure to follow internal grievance procedures and administrative mechanisms available for complaints of employees of the type alleged by plaintiff.

Clearly, this refers to the notice deadlines stated above.  Thus, the ADR policy inequitably deforms Ms. Lorntzen's substantive rights, by shortening the statute of limitations.  Under Title VII, Ms. Lorntzen is only required to file a charge of discrimination with the appropriate administrative agency, as she did, within 300 days.  But, under the "written notice" provision stated above, she has already forfeited her rights to pursue her claims.  At least, that is exactly what defendant is asserting in ¶ 24 of its Answer.  This renders the agreement unconscionable.  *See LeLouis v. Western Directory Co.,* 230 F.Supp.2d 1214, 1221 (D. Oregon 2001) (arbitration agreement was unconscionable because it shortened statute of limitations, and in effect negated the continuing violation doctrine).

### D.    Ms. Lorntzen Has Elected Not to Pursue Arbitration, and Therefore Is Not Bound by the ADR Policy.

The plain language of the ADR policy states that an employee must provide notice before they are required to submit to binding arbitration.  The agreement states, in part that the parties, " . . . must notify  . . . of his or her **intent** to take the matter to binding arbitration . . .  (See ADR policy, p. 2).  At her option, Ms. Lorntzen elected not to pursue the option of binding arbitration.  The ADR Policy does not state what consequences occur if an employee fails to provide notice of

10

an intent to proceed to arbitration, but obviously defendant believes that Ms. Lorntzen has forfeited her rights. (*See* Defendant's Answer, ¶ 24). Specifically, it does not state that an employee thereby loses their right to seek Title VII relief in court. As the court is aware, contract language is given its plain meaning if the language is clear and unambiguous. *Thomas v. Thomas*, 250 Kan. 235, Syl. ¶ 3, 824 P.2d 971 (1992). Thus, the court should construe the agreement to provide that if an employee does <u>not</u> notify the employer of their intent to pursue arbitration, then they simply are not required to arbitrate. This interpretation is reasonable and consistent with the parties intent as expressed in the ADR policy language. *See Weber v. Tillman*, 913 P.2d 84, 96 (Kan. 1996) (contracts are to receive a reasonable construction to determine the intent of the parties at the time the contract was executed). If the court were to require Ms. Lorntzen to arbitrate, after she has not provided the required notice, it would render the notice provisions of the policy superflous.[4] *See Dillard Dept. Stores, Inc. v. State, Dept. of Human Resources*, 13 P.3d 358, 235 (Kan.App. 2000) (a document should be read to give effect to all its provisions and render them consistent with each other).

For the foregoing reasons, Ms. Lorntzen requests that the court deny Defendant's Motion to Stay and Compel Arbitration.

---

[4] Again, to the extent the ADR Policy is ambiguous on this issue, the court should construe it against Swift, who was also the party with superior bargaining power. *Weber*, 913 P.2d at 476 (employment contract should be construed against drafter); *Liggatt v. Employers Mut. Cas. Co.*, 46 P.3d 1120, 1126 (Kan.2002) (ambiguous language is construed against the drafter).

Respectfully submitted,

SANDERS, SIMPSON, FLETCHER, &
SMITH, L.C.

By:  _s/Mark A. Buchanan_
  Mark A. Buchanan, Ks. Bar. # 13110
  1125 Grand Boulevard, Suite 1400
  Kansas City, MO 64106
  (816) 471-6444
  (816) 471-6664 (FAX)

Attorneys for Plaintiff Billie Jo Lorntzen