IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

| | |
|---|---|
| BILLIE JO LORNTZEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  Case No.: 03-2405-CM |
| | ) |
| SWIFT TRANSPORTATION CO., INC., | ) |
| | ) |
| Defendant. | ) |

## DECLARATION OF BILLIE JO LORNTZEN

I, Billie Jo Lorntzen, do depose and state, as follows:

1. I began working for Swift Transportation Company in 1994, after being employed by its predecessor, MNX Trucking Company. I worked at the Swift Trucking terminal at 9000 Woodend Road, Kansas City, Kansas from January 1996, until I was forced to resign on May 14, 2002.

2. My job title with Swift was a compliance/safety worker in the Defendant's Recruiting Department.

3. My work in the recruiting department was essential to operation of Swift Transportation Company. Without my services, including orientation and testing of prospective new drivers, this terminal would soon cease to operate. Without a solid recruiting department, the company would be unable to hire and retain drivers. Because of the constant turnover among drivers, the job that I performed was of paramount important to Swift's operations.

4. The transporation industry, of which Swift is a part, is closely regulated by the U.S. Department of Transportation (DOT). My job involved assuring compliance with a variety of DOT rules and regulations, including preparing documentation for drivers required by federal regulations.

5. Specifically, it was my responsibility each week to provide training and orientation to new truck drivers, and verify and obtain the necessary information for them to become employed by Swift as truck drivers. I was required to complete, and/or cause the drivers to complete, the necessary paperwork to complete the vast majority of the items on the attached "Driver File Check-list." (See copy attached as Exhibit A-1). Swift required as a matter of policy that no drivers were to be set up to drive until all of these compliance and work history forms are completed, boxed, and sent to the main office.

6. Each week, I would provide orientation and classroom training to between 15 and 20 new drivers. Another employee in her department, Don Smith, also assisted with some of these tasks. Mr. Smith would introduce himself, and then they would pass out forms to the new drivers, and provide explanation. The drivers would also complete new employment applications. The DOT requires us to obtain a 5 years work history from non-drivers, and 10 years from professional (experienced) drivers.

7. As part of my weekly duties, I reviewed with all of the drivers the legal and other requirements of the DOT and Swift Transportation such as completing log books, moving violation compliance, and the drug testing program.

8. On Monday of each week, the prospective new drivers would be required to complete a "long form physical", (on a form provided by the United States Department of Transportation). They would also complete a pre-employment questionnaire.

9. I would obtain information from the drivers, and documentation, including their drivers' license and Social Security cards, and transfer this information to the necessary forms. For example, I would verify Certificates showing if the prospective drivers had completed Driver Training School.

10. Pursuant to an agreement between Swift and the Department of Transportation, I would

act as a collector in the DOT drug testing program. This included collecting urine specimens from the prospective drivers, under strict DOT guidelines. I would also administer a mandatory vision and hearing test to the drivers.

11. The prospective new drivers would then wait for the doctor who would conduct the actual physical examination. This part of my job duties was usually completed by 1:00 p.m. on Monday. After the doctor completed his examination, the drivers with prior experience would proceed to a road test, while the new drivers (students) would proceed to their training.

12. After they completed their medical examinations on Monday of each week, we would make a final presentation to the potential new drivers, and hand out to them the results of their "long form" physical examinations.

13. I would spend the first three days of each week gathering the necessary documentation to complete the Driver File Check-List. If everything was properly completed, I would issue medical cards to the drivers. If the drivers files were not complete, then they would not be permitted out on the road driving for Swift.

14. In addition, at various times during the week, if the driver managers at Swift were unable to answer a specific questions of a new driver, or an experienced driver, they would refer them to me. I would also receive e-mail messages from drivers while they were on the road regarding problems with issues such as their tuition reimbursement.

15. In addition, it was also a regular part of my job duties that if any driver employed by Swift would have an accident in the vicinity of the Bonner Springs, Kansas terminal, I would receive a telephone call, at any time, day or night, requiring me to go to the terminal to conduct a drug test of that driver. This

procedure was later changed in the last year of her employment.

16. In addition to my duties performed during my regular working hours, I would take home a large amount of paperwork pertaining to completion of the driver-files each week, and spend approximately 3 hours on Tuesday nights and a couple of hours on Saturdays at home organizing the paperwork that would be necessary to inform the employees at Swift of the names and locations of the new drivers.

17. On Tuesday nights I would take all of the paperwork for the new drivers home, and start stacking the forms in the proper order, in order to complete the Driver File Check-List. She would type up many of the forms on Tuesday during the day.

18. On Wednesdays and Thursdays of each week, I would prepare the necessary follow-up paperwork to complete the driver files. I would inform Mr. Smith what additional paperwork was needed to compile to complete the Driver File Check-List, and he would assist me in obtaining it. I would give this information to Jackie Black, payroll clerk.

19. After they completed the orientation, depending on their experience, the new drivers would proceed to two to six weeks of training.

20. Also each week, usually on Friday, I would compile a list of new driver applications, and overnight it to an area transportation company, so that they would arrange to bring the new drivers to the terminal on Monday mornings. During their three day training, the drivers stayed in bunk-rooms at the facility, or were sent to area motels. I would help arrange their transportation to and from their lodging to the Bonner Springs terminal. Also on Fridays of each week, she would make copies of the Driver File Check-List and fax them to Defendants Corporate Office in Phoenix, Arizona. On nearly every Friday

night, I would take home a large number of documents to work on over the weekend.

21.	Also as part of my regular duties, I would also administer *random* drug testing to our current drivers. Swift's policy was to conduct a random drug test of each driver once a month. On any given week, I would have from 20-30 random drug tests to administer. Pursuant to the procedures required by the United States DOT, once a driver was informed they would be giving urine specimen, I must keep them in my sight until after the test was administered. I would then send the test results to the Memphis Office, along with chain-of-custody forms provided by the DOT.

22.	I was told by my managers that unless the random drug tests and other drug screening tests administered to new drivers were done *exactly* according to DOT procedures, Swift could lose their on-site testing privileges, costing Swift as much as $10 million dollars.

23.	At no time before, during or after my employment did I notify Swift Transportation in writing (or verbally) that I intended to take the matters covered in my Complaint to binding arbitration.

Pursuant to 28 U.S.C. § 1746, I hereby declare under penalty of perjury that the foregoing is true and correct. Executed on this 8th day of October 2003.

*Billie Jo Lorntzen*
Billie Jo Lorntzen