IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| BILLIE JO LORNTZEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION |
| v. ) | |
| ) | No. 03-2405-CM |
| ) | |
| SWIFT TRANSPORTATION, INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM AND ORDER

This matter comes before the court on defendant's Motion to Stay Proceedings and to Compel Arbitration (Doc. 8). Defendant asserts that the parties are bound to arbitrate any disputes arising from plaintiff's employment, while plaintiff contends she is exempt from the Federal Arbitration Act ("FAA"), and that the arbitration agreement is illusory and unconscionable.

**I.     Transportation Worker Exemption to the FAA**

The FAA establishes that valid agreements between parties to arbitrate their disputes are enforceable.

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. The FAA, therefore, directs a district court to stay the proceedings in a suit brought by a party to an arbitration agreement.

> [T]he court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement.

*Id.* § 3.

There are conditions, however, in which arbitration agreements are held invalid as a matter of law. One important restriction in the FAA is that arbitration agreements "shall [not] apply to contracts of employment of seaman, railroad employees, or any other class of workers engaged in foreign or interstate commerce." *Id*. § 1. In *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 118-19 (2001), the Court explained that § 1 did not exempt all contracts of employment from the mandates of the FAA. Rather, the Court held, § 1's preclusive effect is limited and "exempts from the FAA only contracts of employment of transportation workers." *Id.* at 119. Truck drivers who deliver goods are therefore also exempted from the FAA by §1. *See, e.g. Harden v. Roadway Package Sys.*, 249 F.3d 1137, 1140 (9th Cir. 2001).

At issue, though, is the status of a worker, such as plaintiff, who is not a truck driver, but who works with truck drivers and in a transportation company. The *Circuit City* Court held that the § 1 language "engaged in commerce" meant that the exemption to the FAA should be read narrowly, particularly since the phrase occurs in the middle of a statute meant to overcome the perceived judicial hostility to arbitration agreements. *Circuit City*, 532 U.S. at 119. The Court also noted that "most Court of Appeals conclude the exclusion provision is limited to transportation workers, defined, for instance, as those workers ***actually engaged*** in the movement of goods in interstate commerce." *Id*. at 112 (emphasis added). Nevertheless,

-2-

the Court did not formally adopt a definition of the degree of involvement with commerce necessary to define an employee as a transportation worker for purposes of § 1 of the FAA.

The Second Circuit concluded that the application of § 1's exclusion to a worker's employment contract did not turn on "whether the individual worker actually engaged in interstate commerce, but whether the class of workers to which the complaining worker belonged engaged in interstate commerce." *Bacashihua v. United States Postal Serv.*, 859 F.2d 402, 405 (6th Cir. 1988) (citing *Tenney Eng'g, Inc. v. United Elec. Radio & Mach. Workers of Am., Local 437*, 207 F.2d 450, 452-53 (3rd Cir. 1953). Therefore, the *Bacashihua* court held, the plaintiff was exempt from the FAA because she was a parcel post distributor employed by the U.S. Postal Service and "[i]f any class of workers is engaged in interstate commerce, it is postal workers." *See also Am. Postal Workers Union v. United States Postal Serv.*, 823 F.2d 466, 473 (11th Cir. 1987) (holding that "if any workers are 'actually engaged in interstate commerce,' the instant postal workers are.").

The Third Circuit has held that the question for the courts is to determine whether Congress "intended to exclude only those employees ***actually engaged*** in the channels of interstate or foreign commerce or did it comprehend all those ***engaged in activities affecting such commerce***, such as the production of goods destined for sale." *Tenney*, 207 F.2d at 452 (emphasis added). The court reviewed the legislative history behind the FAA and determined that the § 1 exemption should be narrowly applied because it was drafted to exclude classes of transportation workers who already operated under special arbitration legislation. *Id*. at 452-53. Consequently, the Third Circuit found, manufacturing employees and plant maintenance personnel do not fall into the exemption because "while their activities will undoubtedly affect interstate commerce they are not acting directly in the channels of commerce itself." *Id.* at 453; *see*

*also Patterson v. Tenet Healthcare, Inc.*, 113 F. 3d 832, 836 (8th Cir. 1997) (holding that the exemption "includes 'only those other classes of workers who are likewise engaged directly in . . . the movement of interstate or foreign commerce or in work so closely related thereto as to be in practical effect part of it.'" (quoting *Tenney*, 207 F.2d at 452)).

In *Palcko v. Airborne Express, Inc.*, No. Civ.A. 02-2990, 2003 WL 21077048 (E. D. Pa. May 20, 2003), the district court considered the breadth of the class of employees considered transportation workers. The plaintiff in *Palcko* was a supervisor at an interstate shipping company and was responsible for overseeing between 30-35 delivery drivers. Therefore, the court held, "[b]ecause she oversaw the delivery of goods, her job was 'so closely related' [to the transport of the goods] 'as to be in practical effect part of' [the shipping of the goods] and she should be considered a transportation worker." *Id*. at *3 (quoting *Tenney*, 207 F.2d at 452).

Other courts have concluded that while an employee worked in a transportation industry, the employee's job duties were not so closely related to interstate commerce as to consider the employee a transportation worker and therefore exempt from the FAA. The Eleventh Circuit has held that a pre-departure security agent who inspected goods and people at an airport was not "engaged in commerce" and therefore not exempt from the FAA. *Perez v. Globe Airport Sec. Servs., Inc.*, 253 F.3d 1280, 1284 (11th Cir. 1987) (*vacated upon parties' joint motion to dismiss*). The D.C. Circuit in *Cole v. Burns Int'l Sec. Servs.*, 105 F.3d 1465, 1471 (D.C. Cir. 1997), concluded that a security guard at a train station was not engaged in the transportation of goods in commerce. Finally, in *Kropfelder v. Snap-On Tools Corp.*, 859 F. Supp. 952, 958-59 (D. Md. 1994), the district court ruled that a warehouse worker who filled orders and loaded and unloaded trucks did not fall within the § 1 exemption.

Plaintiff argues that she was a transportation worker and therefore not required to arbitrate her dispute with defendant because she is exempt under § 1 of the FAA. Plaintiff's job title while working for defendant was Safety Compliance Assistant. Plaintiff asserts that it was her responsibility to ensure that all the necessary paperwork was completed and collected on the "Driver File Checklist," and that the paperwork was maintained in a folder for each driver. Plaintiff also asserts that the paperwork she gathered was required by the United States Department of Transportation ("DOT") for the certification and licensing of new drivers. Plaintiff also states that she collected urine samples for drug testing and completed hearing and vision screenings before a doctor would perform a physical examination.

Finally, plaintiff contends that she provided orientation and training to new drivers, although she does not specify what those duties entailed, and she avers that she reviewed the DOT's and defendant's legal requirements and procedures regarding log books, moving violation compliance, and drug testing. Don Smith, plaintiff's former supervisor, contests plaintiff's statements and declares that he trained and oriented new drivers, and that plaintiff handed out paperwork relating to legal requirements before he actually covered the topics in his orientation.

Even taking as true all of plaintiff's descriptions of her job responsibilities, the court concludes that plaintiff is not a transportation worker for purposes of § 1 of the FAA. Each court that has determined an employee's classification for purposes of § 1 has reached its conclusion after a case-by-case, factual determination. Two courts have concluded that postal workers, who process packages that move interstate, are exempt under § 1, *see Bacashihua*, 859 F.2d at 405; *American Postal Workers Union*, 823 F.2d at 473, while another court has held that a worker who loaded and unloaded trucks that moved

across state lines was not a transportation worker, *see Kropfelder*, 859 F. Supp. at 958-59.  One court has even determined that the supervisor of interstate truck drivers was considered a transportation worker. *See Palcko*, 2003 WL 21077048, at *3.  The court views each of these cases as evaluating employees who fall near the boundary between workers who are exempt under § 1 and those who should not be considered transportation workers.

The court groups the above holdings in order to distinguish them from the other cases discussed above where an employee works in a transportation industry but is in a distant relationship to other workers who are transportation workers.  Examples include security guards at airports and train stations or warehouse workers who construct and package goods that eventually travel interstate.  Plaintiff's case falls into this second set of cases.  Plaintiff did not travel interstate, nor handle goods that traveled interstate, nor supervise employees who were themselves transportation workers.  Plaintiff's duties were more akin to those employees who serve an important support role in a transportation industry, but who are not themselves transportation workers.  In theory all employees could trace a relationship to a transportation worker; therefore, a line must be drawn between employees that are exempt under § 1 and those that are not.  The court concludes in this case that plaintiff is not an exempt transportation worker for purposes of § 1of the FAA.

**II.     Plaintiff's Argument that the Arbitration Agreement is Illusory and Unconscionable**

An agreement to arbitrate that does not bind one or both of the parties is considered illusory and, as a consequence, unenforceable.  *Phox v. Atriums Mgmt. Co., Inc.*, 230 F. Supp. 2d 1279, 1282 (D. Kan. 2002). Thus, when an arbitration clause is a part of an employee handbook that also contains statements advising the employee that the handbook does not create a contract, and that the employer reserves the right

-6-

to rescind or revise any portion of the handbook, the agreement to arbitrate is unenforceable.  *See id*; *see also Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 939 (4th Cir. 1999) (holding agreements to arbitrate invalid where the employer reserves the right to unilaterally change the rules of arbitration).

Plaintiff asserts that the arbitration agreement is illusory because in two places in defendant's Employment Handbook ("Handbook"), defendant states that, with the exception of the employment-at-will policy, defendant reserves the right to revise or delete the policies in the Handbook.

Defendant challenges plaintiff's excerpts from the Handbook and argues that several other places in the Handbook make clear that the arbitration agreement constitutes a contract.  The Handbook states the following:

> Nothing in this Non-Driver Handbook (**with the exception of the employment at-will policy and the Alternative Dispute Resolution policy**), or in any other personnel document, including benefit plan descriptions, creates, or **is intended to create a contract**, promise, or representation of continued employment for any employee.
> . . .
> [T]his **policy of at-will employment and the Alternative Dispute Resolution policy are the sole and entire agreements between you and the Company** as to the duration of employment and the circumstances under which employment may be terminated and the circumstances under which major employment disputes may be resolved.  **With the exception of employment at-will and the Alternative Dispute Resolution Program, terms and conditions of employment with Swift may be modified at the sole discretion of Swift** with or without cause or notice at any time.

Non-Driver Handbook, Pl. Ex. B, at 1-2.  Additionally, defendant contends, plaintiff signed a separate Alternative Dispute Resolution Policy Acknowledgment and Receipt ("ADR Acknowledgment"), which specifically states that the arbitration agreement governed all future legal disputes and did not give defendant the right to modify its terms.

The court concludes that the parties' arbitration agreement was not illusory.  Defendant's Handbook did contain a general statement of defendant's right to modify the Handbook's terms.  However, the

-7-

Handbook also distinguishes between the terms that represented a contract and the terms that were not intended to create a contract between the parties. The Handbook specifically references the Alternative Dispute Resolution and employment-at-will policies and indicates that these policies did create a contract between the parties. The Handbook also explicitly excludes these two policies from the conditions that defendant reserved the right to modify. Finally, the ADR Acknowledgment, which plaintiff signed, contains no indication that defendant retained the right to modify the terms of arbitration.

**III.     Plaintiff's Argument that the Arbitration Agreement Shortens the Title VII Statute of Limitations**

Plaintiff contends that the arbitration agreement is unconscionable because it shortens the statute of limitations under Title VII.

The court concludes that plaintiff misinterprets the deadlines set forth in the arbitration agreement. The agreement states that an employee must present notice of her dispute within the applicable statute of limitations period. Clearly, therefore, the arbitration agreement preserves the identical statute of limitation created by Title VII.

**IV.     Plaintiff's Argument That She Can "Elect" to Not Pursue Arbitration**

Plaintiff asserts that because the arbitration agreement states that the employee must notify defendant of her "intent" to arbitrate a dispute, that the decision of whether to arbitrate or else take a matter to court is elective.

Plaintiff's argument completely misconstrues the arbitration agreement. In multiple places, the agreement makes clear that arbitration is the "exclusive remedy"; that the agreement served as a "waiver of the parties' rights to a civil court action"; and, that if, after filing a complaint with the Equal Employment Opportunity Commission, "a right-to-sue notice is issued, binding arbitration shall be the exclusive remedy"

-8-

for both parties. The court therefore concludes that the decision to arbitrate is not elective, but rather is compulsory and the only remedy available to the parties.

**V.    Order**

**IT IS THEREFORE ORDERED** that defendant's Motion to Stay Proceedings and to Compel Arbitration (Doc. 8) is granted. The court finds that plaintiff's claims against defendant are subject to arbitration, and plaintiff's claims are hereby stayed pending arbitration.

**IT IS FURTHER ORDERED** that the parties shall proceed to arbitration in accordance with the provisions of the arbitration clause.

**IT IS FURTHER ORDERED** that this court shall retain jurisdiction to review, modify, or vacate any arbitration awards, should any party choose to seek such action as permitted by the FAA.

Dated this 1st day of April 2004, at Kansas City, Kansas.

     **s/ Carlos Murguia**
**CARLOS MURGUIA**
**United States District Judge**